UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JEFFREY DICKS,                                          :
                                                        :
                **Plaintiff,**                :
                                                        :
      -against-                                    :      03 Civ. 7411 (HB)
                                                        :
                                                        :      **OPINION &**
                                                        :      **ORDER**
                                                        :
BINDING TOGETHER, INC.; JOSEPH WILLIAMS,                :
THE WARDEN OF LINCOLN CORRECTIONAL                      :
FACILITY; MEMBERS OF THE TEMPORARY                      :
RELEASE COMMITTEE; TRC CHAIRPERSON                      :
JOAN TAYLOR, SCC; P.O BREWINGTON;                       :
C.O. FAIR; CORRECTIONS COUNSELOR MS.                    :
DONNA MCDONALD; DEPUTY SUPERINTENDENT                   :
MARIA TIRONE; and STATE OF NEW YORK,                    :
                                                        :
                **Defendants.**               :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[1]

      *Pro se* Plaintiff Jeffrey Dicks ("Plaintiff" or "Dicks") brings this action against Defendants Superintendent Joseph Williams, Deputy Superintendent Maria Tirone, Corrections Counselor Donna MacDonald, Temporary Release Committee chairperson Joan Taylor, "Corrections Officer Fair,"[2] and the State of New York (collectively, "Defendants").[3] Plaintiff alleges various constitutional claims pursuant to 42 U.S.C. § 1983. Defendants move to dismiss Plaintiff's complaint in its entirety.

---

[1] The Court wishes to thank Chris Fitzgerald of CUNY School of Law for his assistance in researching this Opinion.

[2] Defendants have not, to date, identified the first name of "Corrections Officer Fair" in their moving papers, prior motions, or prior correspondence with this Court.

[3] Defendant, in his amended complaint of February 15, 2006, named Janet Chow, the director of the Binding Together work release program, as a Defendant. Pursuant to my Order of April 18, 2006, the Attorney General, in conjunction with the U.S. Marshals, attempted to effectuate service upon Ms. Chow. On May 11, 2006, the Attorney General reported to me that the Marshals were unable to effectuate service upon Ms. Chow, as she resigned from Binding Together in 2003, was believed to have moved out of the area, and her whereabouts were unknown. On September 19, 2006, Plaintiff again named Chow as a Defendant in his Amended Complaint. No service was effectuated (nor, it appears, attempted). On September 29, 2006, Plaintiff, in his now-operative Amended Complaint, did not name Chow as a Defendant. The Clerk of the Court terminated Janet Chow as a Defendant on September 29.

For the reasons articulated below, Defendants' motion is granted in part and denied in part.

## I.   BACKGROUND

The following facts are taken from Plaintiff's complaint (and construed liberally, as Plaintiff is *pro se*).

   A.  Underlying Facts of Plaintiff's Complaint

Plaintiff was an inmate, it appears, at Wyoming Correctional Facility in 2001. Plaintiff's Amended Motion Brought Under Fed. R. Civ. P. 60(b), September 29, 2006 ("Pl. Compl.") at 4.[4] In September 2001, according to Plaintiff, he was transferred to a work release facility, apparently Lincoln Correctional Facility, and approved for the Binding Together vocational training work release program. See generally Pl. Compl. ¶ 7-8. Plaintiff was "learning a series of computer programs and document lithographics." Id. at 4. Plaintiff began the work release program on October 16, 2001. Pl. Compl. ¶ 7. He alleges he was issued a "continuous contractual agreement to participate" in that program. Pl. Compl. ¶ 10.

On October 9, 2001, the Appellate Division, Second Department affirmed Plaintiff's criminal conviction. Pl. Compl. ¶ 9; see also People v. Dicks, 287 A.D.2d 517 (N.Y. App. Div. 2001). On November 13, 2001, according to Plaintiff, his post-conviction motion was denied by the trial court. Pl. Compl. ¶ 11. Around this time, Plaintiff alleges that he advised his corrections counselor, Donna MacDonald, "that he

---

In a letter of July 31, 2006, Defendant requested leave of court to amend his complaint to add Binding Together. Defendant named Binding Together as a Defendant in his now-operative Amended Complaint of September 29, 2006. No service was effectuated (nor, it appears, attempted). Accordingly, I now dismiss Binding Together from this case as a Defendant.

In his amended complaint of February 15, 2006, Defendant also named Parole Officer "R. Carrington." Service was attempted on Carrington by the U.S. Marshals on May 10, 2006, but was returned unexecuted. The Attorney General subsequently informed me that Carrington died on July 5, 2005. Defendant did not name Carrington as a Defendant in subsequent complaints. The Clerk of the Court terminated Carrington as a Defendant on September 19, 2006.

In his amended complaint of February 15, 2006, Defendant also named Parole Officer Mrs. Brewington as a Defendant. Service was attempted on Brewington by the U.S. Marshals on May 10, 2006, but was returned unexecuted. The Attorney General subsequently informed me that Brewington is critically ill and on extended leave from the New York State Division of Parole. Defendant named Brewington in his subsequent Complaints, including his now-operative Amended Complaint of September 29, 2006. No further service was effectuated (nor, it appears, attempted). Accordingly, I now dismiss Brewington from this case as a Defendant.

[4] This "Amended Motion" serves as Plaintiff's currently operative complaint.

2

would need to access facilities that would enable him to properly address his legal concerns." Id. at ¶ 12.  Specifically, Plaintiff alleges that he "constantly asked for time to research… and prepare an appeal… to exhaust the remaining state remedies before the 30-day statutory limit," and gave notice to MacDonald and his parole officer, Brewington, of his concerns.[5]  Id. at ¶¶ 14-15.  However, Plaintiff states that about "3 ½ months after the State Court's denial,"[6] "the facility" issued him "a pass for Saturdays to attend the New York Public Library in Manhattan.[7]  Id. at ¶ 27.

On March 5, 2002, it appears Plaintiff was terminated from the Binding Together program due, according to Plaintiff, "to being sick." Pl. Compl. ¶ 7.  On March 6, 2002, Plaintiff returned to the work release facility.  Plaintiff spoke to his counselor, Donna MacDonald, and parole officer, Brewington, and was placed in the Special Housing Unit after MacDonald allegedly became "very unruly."  Pl. Compl. ¶¶ 17-18.  Plaintiff alleges that he was not allowed access to "pen and paper to challenge anything." Id. at ¶ 7.

On March 13, 2002, a hearing was held before the Temporary Release Committee.  Id. at ¶ 18.  MacDonald was not present.  Id.  Plaintiff alleges that he did not receive a "notice of warning, a conference… or any other ways [sic] that a reasonable person would have to be notified in writing."  Pl. Opp. at 9.  Plaintiff generally avers that "no one ever inquired about any written documents… from Binding Together."  Pl. Opp. at 13.  After the hearing, Plaintiff was placed on 90 days' probation without furloughs.  Pl. Compl. ¶¶ 18-19.[8]

---

[5] Plaintiff refers to the fact that at some point, he filed a motion pursuant to N.Y. Crim. Proc. Law § 440, that was denied in 2001.  Pl. Mem. Opp. at 33.  It seems, although is not entirely clear, that Plaintiff filed a petition for *habeas corpus* in state court.  Plaintiff also suggests that he filed a § 2254 federal habeas corpus petition at some point (apparently, in the Northern District of New York, subsequently transferred to the Eastern District of New York), and that that § 2254 petition was denied for failure to exhaust administrative remedies.  Pl. Mem. Opp. at 33; Pl. Compl. ¶ 36.

[6] It is unclear which denial, exactly, Plaintiff refers to.

[7] Plaintiff avers, however, that he "did not possess or understand the new technology skills due to a lengthy period of incarceration."  Pl. Compl. ¶ 27.  Additionally, Plaintiff stated that the hours of 10 a.m. to 4 p.m. was not an "adequate time frame… to research legal issues and draft up motions," as the law books were "very different compared to the books [Plaintiff] is used to looking at…"  Pl. Compl. ¶ 27.

[8] It appears, from a Department of Correctional Services computerized summary of that hearing, that Superintendent Joseph Williams gave final approval to the Temporary Release Committee's decision.  Defendants' Motion to Dismiss, Ex. A.  Plaintiff's arguments are generally consistent with this apparent fact.

It is not clear whether I may judicially notice and consider that computerized summary on a motion to dismiss.  Defendants have not asked me to judicially notice it, nor provided argument in support of that proposition.  I will accordingly refrain from considering that summary on this motion.

3

Plaintiff alleges that (apparently) around this time, he returned to the work release facility, and Ms. MacDonald berated him in front of her colleagues. Pl. Compl. ¶ 22. Plaintiff avers that he requested, at this point, "time to get his criminal appeal done."[9] Id. Plaintiff also avers that he submitted a letter around this time in which he requested to "handle research matters for his legal obligations."[10] Pl. Compl. ¶ 24. Plaintiff generally avers that Lincoln Correctional Facility "did not have a law library to help aid in the assistance of pending litigation at [this] time." Pl. Compl. at 15.

Plaintiff also alleges that during their conversation, Ms. MacDonald yelled at him that "no church pass will be given" to Plaintiff. Pl. Compl. ¶ 22. Plaintiff states that he is of the Pentecostal faith. Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp.") at 8. Plaintiff generally states that 25 to 30 individuals at Lincoln were of the Pentecostal faith, but Lincoln did not provide Pentecostal services to those inmates. Pl. Opp. at 23. Plaintiff alleges that previously, he had been allowed to attend worship and counseling services at "Bethel Gospel." Pl. Compl. ¶ 14. "From March [to] April 2002," according to Plaintiff, he "spoke about a various amount of matters," including a "request for a continuous church pass," and specifically alleged that he "asked for a church pass for Sunday Worship Service." Id. at ¶ 26, 28. Plaintiff alleges that "[n]o response was given." Id. at ¶ 28. Plaintiff states that around this time, there was no [Inmate Grievance Review Committee] "IGRC" box, or "IGRC Office," at Lincoln through which he could file an administrative grievance. Id. at ¶ 22.

On April 18, 2002, Plaintiff (according to him) was "suspended from school" (presumably the Binding Together work release program). Pl. Compl. ¶ 29. He claims that "no documents were handed to him… on this matter." Id. When Plaintiff returned to the work release facility, no one was present. Id. at ¶ 30. The next day, April 19, Plaintiff went to Binding Together to speak to the director, Janet Chow, who was not present. Id. at ¶ 31. Plaintiff was told by another Binding Together counselor to "go home." Id. Plaintiff then attended a "loved one's funeral." Id.

---

[9] According to Plaintiff, "several months later," a Binding Together counselor did indeed give him permission to "address conducting research in challenging his criminal conviction, as long as [Plaintiff] was able to keep up with the [Binding Together] work…" Pl. Mem. Opp. at 5.

[10] Plaintiff avers that at one time, he had a copy of the letter, but "like most of his possessions at Lincoln," it "had been packed away by other people." Pl. Compl. ¶ 23.

4

Subsequently, upon his return to the work release facility, Plaintiff alleges he was placed in the Special Housing Unit "void of any explanation or documentation," because his parole officer, Brewington, had "placed [it] in the computer." Pl. Compl. at ¶ 33.[11] The Temporary Release Committee, which according to Plaintiff, consisted of Chairperson Joan Taylor, Parole Officer Carrington, and Special Housing Unit Officer Fair, held a hearing on April 24, 2002 regarding whether Plaintiff was "out of bounds." Pl. Compl. ¶ 34. Plaintiff avers that "no one ever discussed any factors of what led up to the suspension and how long it is supposed to last." Pl. Mem. Opp. at 18. Plaintiff avers that there was "no substantial proof that Plaintiff traveled out of the state…" Pl. Mem. Opp. at 19.

After that hearing, which Plaintiff avers was recorded on tape, the committee unanimously voted to remove Plaintiff from work release.[12] Pl. Compl. ¶ 34. Plaintiff was subsequently transferred to Riverview Correctional Facility. Id. at ¶ 35.

Plaintiff avers that he was "supposed to go to his Merit Board" in September 2002, and that he had "all the requirements needed for Merit Board eligibility," but that the Merit Board action "never transpired." Pl. Compl. ¶ 41.

Plaintiff states that while at Riverview Correctional Facility, he did receive access to the law library and filed "several grievances in regards to harassment and unnecessary searches and the damage of property unnecessarily." Pl. Compl. ¶ 13.

B. Procedural History

Plaintiff filed his first complaint in this matter on September 22, 2003, before the Honorable Chief Judge Michael Mukasey. Plaintiff subsequently (or concurrently) wrote to the Court to voluntarily dismiss the case. On September 25, 2003, Judge Mukasey granted Plaintiff's request.

---

[11] Plaintiff also alleges that when he was placed in the SHU, "his property was packed by someone else… [m]inus some items." Pl. Compl. at ¶ 33.

[12] A copy of a Department of Correctional Services computerized summary of that hearing is appended to Defendant's Motion to Dismiss as Exhibit B. It appears, from reviewing that summary, that Deputy Superintendent Maria Tirone gave final approval to the Temporary Release Committee's decision. Plaintiff's arguments are generally consistent with this apparent fact.

It is not clear whether I may judicially notice and consider that computerized summary on a motion to dismiss. Defendants have not asked me to judicially notice it, nor provided argument in support of that proposition. I will accordingly refrain from considering that summary on this motion.

On October 20, 2003, Plaintiff appealed the voluntary dismissal to the Second Circuit. On April 19, 2005, the Second Circuit remanded Plaintiff's action to the district court. On May 25, 2005, the district court reopened the action and directed Plaintiff to submit an amended motion pursuant to Fed. R. Civ. P. 60(b). On December 13, 2005, following a request for extension of time, the district court granted Plaintiff's Rule 60(b) motion and directed Plaintiff to submit an amended complaint. On February 15, 2006, Plaintiff submitted an amended complaint. On April 12, 2006, Plaintiff's action was transferred from Judge Mukasey to this Court. On September 19, 2006, Plaintiff amended his complaint again. On September 29, 2006, subsequent to Defendants' motion to dismiss and pursuant to my individual practices, Plaintiff filed the now-operative Amended Complaint. On October 31, 2006, I ordered that Plaintiff be allowed no further amendments.

    C.  Plaintiff's Complaint

Plaintiff alleges three primary causes of action in his Complaint. First, Plaintiff alleges that he was denied substantive and procedural due process at the Temporary Release Committee hearings – both the initial hearing, after which he was placed on 90 days' probation, and the second hearing, after which he was removed from the work release program.

Secondly, Plaintiff alleges that he was denied access to the courts, in that he lost the opportunity to file a N.Y. Crim. Proc. Law § 440 petition (and, although it is unclear, perhaps a 28 U.S.C. § 2254 petition as well) because corrections and work release staff did not grant him authorization to research and prepare the necessary documents to meet his statutory deadline for those petitions.

Third, Plaintiff alleges that he was deprived of his freedom of religion in that corrections staff denied him a pass to attend church services of his particular faith (in Plaintiff's case, the Pentecostal faith).

Plaintiff generally seeks $7 million dollars in actual, punitive, and nominal damages for each of the above alleged constitutional violations against the various defendants.

Regarding his due process claims, Plaintiff also requests to expunge the records of his work release violations. Pl. Compl. at ¶ 14. Plaintiff also requests to be allowed to

6

complete the necessary training program [and] a certificate of some type of acknowledgement for completing the last 60 days of training along with pay." Id. Plaintiff additionally requests an order to keep his current job with the City of New York while finishing the necessary training. Id.

Regarding his "denial of access" claim, Plaintiff also requests a "written stipulation" agreeing that employees of Lincoln Correctional Facility "hampered the plaintiff from filing timely and necessary appeals to exhaust state remedies in appealing [his] criminal conviction." Pl. Compl. at 15.

Defendants, on October 20, 2006, moved to dismiss Plaintiff's now-operative Amended Complaint.

## II.   STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Since the plaintiff is the non-movant and proceeding *pro se*, I must construe his papers liberally and "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted).

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's complaint, in whole and in part, on several grounds. I will address each argument in turn.

### A. Claims Against State of New York

Defendants move to dismiss Plaintiff's claims against the State of New York. It is well settled that under the Eleventh Amendment, the doctrine of sovereign immunity bars actions for retroactive damages against a state or one of its agencies in federal court absent the state's consent to such suit or an express statutory waiver of immunity. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-103 (1984); Mancuso

7

v. New York State Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996); Santiago v. New York State Dep't of Correctional Services, 945 F.2d 25 (2d Cir. 1991) (civil rights actions against Department of Correctional Services under 42 U.S.C. § 1983 for retroactive damages prohibited by Eleventh Amendment).  The State of New York has not so consented to suit in federal court.  Trotman v. Palisades Interstate Park Com., 557 F.2d 35, 38-40 (2d Cir. 1977).  Accordingly, Plaintiff's claims against the State of New York for money damages are dismissed.

Additionally, Plaintiff's claims for money damages against the individual defendants in their official capacities are dismissed.  See Davis v. New York, 316 F.3d 93, 102 (2d Cir. 2002), citing, e.g., Kentucky v. Graham, 473 U.S. 159, 169 (1985) (claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment).

Plaintiff's claims for prospective injunctive relief are not barred by the Eleventh Amendment – provided, however, that Plaintiff brings those claims against a state official, rather than the state itself.  See Santiago v. New York State Dep't of Correctional Services, 945 F.2d 25, 32, citing Ex Parte Young, 209 U.S. 123 (1908).  Plaintiff has named several state officials as Defendants here, and his claims for prospective injunctive relief against those officials are not barred by the Eleventh Amendment.[13]  Plaintiff's claims for prospective injunctive relief against the named Defendant State of New York are barred by the Eleventh Amendment, and are dismissed.  Cf. Flores v. N.Y. State Dep't of Corr. Servs., 2003 U.S. Dist. LEXIS 1680, at *9 (S.D.N.Y. 2003) (plaintiff cannot seek an injunction against DOCS directly).

Thus, the State of New York is dismissed in its entirety as a Defendant in this case.

B.  Personal Involvement of Defendants Williams and Tirone

Defendants move to dismiss all remaining claims against Superintendent Williams and Deputy Superintendent Tirone (in their personal capacities) for lack of personal involvement in the alleged constitutional violations against Plaintiff.

---

[13] That said, it should be noted that it is unclear whether the state officials Plaintiff has named here as Defendants have the authority to grant the injunctive relief he seeks.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), citing, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); see also Scott v. Scully, 1997 U.S. Dist. LEXIS 12966, at *9-10 (S.D.N.Y. 1997) (Baer, J.). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Id., citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Defendants argue that Williams and Tirone were supervisory officials at Lincoln Correctional Facility, and involved in Plaintiff's alleged constitutional violations only to the extent that they approved the findings of the Temporary Release Committee when the Committee placed Plaintiff on probation, and subsequently terminated his work release program. Plaintiff does not directly contradict that statement, but avers that "they have to enter their access codes in order for the decision to be processed."[14] Pl. Opp. at 15. Such "involvement" does not constitute "personal involvement" in alleged constitutional violations under any of the five above-mentioned categories articulated by the Colon Court. See Scott v. Scully, 1997 U.S. Dist. LEXIS 12966, at *11 (where Defendant supervisor only affirmed dismissal of plaintiff's grievance, Court granted motion to dismiss based on lack of personal involvement); see also Ayers v. Coughlin, 780 F.2d

---

[14] Plaintiff also avers that "final approvals for contracts were subject to Superintendent Joseph Williams and or his designee Deputy Superintendent Maria Tirone…" Pl. Opp. at 15. To the extent that Plaintiff alleges Williams' or Tirone's involvement in the approval of his contract to begin work release, such participation is irrelevant, as Plaintiff alleges no constitutional violations regarding the approval of his work release contract (as opposed to the Temporary Release Committee's later termination of the contract). To the extent that Plaintiff's opposition could be construed to state that Williams or Tirone exercised final approval over the Temporary Release Committee's decisions, such a statement squares with Defendant's averments that Williams and Tirone were not personally involved in the alleged constitutional violations.

9

205, 210 (2d Cir. 1985) ("plaintiff's claim for monetary damages… requires a showing of more than… linkage in the prison chain of command").

Additionally, Plaintiff makes no factual allegations that Williams or Tirone were personally involved in Plaintiff's alleged violations of "denial of access to the courts" or free exercise of religion.

Accordingly, all claims against Williams or Tirone are dismissed, and Williams and Tirone are thus dismissed in all capacities as Defendants in this case.

### C. Claims Against Remaining Defendants

Plaintiff's remaining claims are for money damages and injunctive relief against Corrections Counselor Donna MacDonald, Temporary Release Committee chairperson Joan Taylor, and "Corrections Officer Fair" in their individual capacities.

#### a. Due Process Claims

Plaintiff first alleges that he was denied procedural due process at the Temporary Release Committee hearings that ultimately terminated his participation in the work release program.[15]

A prisoner has a due process right to a hearing before he may be deprived of a liberty interest. See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). "Prisoners on work release have a liberty interest in continued participation in such programs." Friedl v. City of New York, 210 F.3d 79, 84 (2d Cir. 2000), citing Kim v. Hurston, 182 F.3d 113, 117 (2d Cir. 1999); Tracy v. Salamack, 572 F.2d 393, 395-96 (2d Cir. 1978). An inmate generally must be afforded advance written notice of the charges against him and a written statement of fact findings supporting the disposition and reasons for the disciplinary action taken. Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999). Subject to legitimate safety and correctional goals of the institution, an inmate should

---

[15] Defendants argue that Corrections Counselor MacDonald should be dismissed for lack of personal involvement as well, as although she issued the initial "out of bounds" charge that led to Plaintiff's first Temporary Release Committee hearing, she was not present at the hearing itself.

It is not clear what role MacDonald played, or was tasked to play, in providing notice to Plaintiff of the charges against him. Additionally, it is unclear what, if any, information (either formal or informal) MacDonald provided to the Temporary Release Committee for its hearings. Construing the *pro se* Plaintiff's allegations liberally, and viewing the facts in the most favorable light, I decline to dismiss the due process claims against MacDonald on this motion to dismiss.

10

also be permitted to call witnesses and present documentary evidence.  Id., citing Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974).

Regarding the first hearing, Plaintiff claims that he did not receive "notice," a "conference," or "any other ways [sic] that a reasonable person would have to be notified in writing."  Pl. Opp. at 9.[16]  Plaintiff also claimed that "no one ever inquired about any written documents… from Binding Together."  Pl. Opp. at 13.  Regarding the second hearing, Plaintiff claims that he was "suspended from school," with "no documents handed to him," placed in the Special Housing Unit "void of any explanation or documentation," see Pl. Compl. ¶¶ 29, 33, and subsequently terminated from work release at a hearing where "no one ever discussed any factors of what led up to the suspension and how long it is supposed to last."  Pl. Mem. Opp. at 18.

Construing Plaintiff's *pro se* allegations liberally, Plaintiff has stated claims for violations of procedural due process – namely, defective notice, the lack of opportunity to present evidence, and the lack of a statement of reasons – before both hearings that affected his liberty interest in continuing his work release program.[17]  Defendants' motion to dismiss those claims is accordingly denied.

Plaintiff also appears to allege a claim for violations of substantive due process at the second hearing, which terminated his participation in the work release program.  Specifically, Plaintiff alleges there was "no substantial proof that Plaintiff traveled out of the state…"  Pl. Mem. Opp. at 19.

A hearing disposition must be supported by "some evidence."  Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999), citing Superintendent v. Hill, 472 U.S. 445, 455 (1985).  Plaintiff essentially alleges that there was no evidence to support the Committee's decision.  Although discovery (most obviously, of the tape of the hearing) and a subsequent motion for summary judgment might have obviated Plaintiff's claim,

---

[16] Plaintiff also claimed that he could not adequately defend himself at the hearing because he was denied pen and paper while in the Special Housing Unit.  See Pl. Compl. ¶ 7.

[17] Defendants also argue that Plaintiff has failed to exhaust his administrative remedies regarding his due process claim.  Defendants note that Plaintiff filed an Article 78 petition in state court to challenge his removal from the temporary release program, but failed to obtain personal jurisdiction over defendants due to defective service.  See Dicks v. Williams, 308 A.D.2d 623 (N.Y. App. Div. 2003). Strangely, however, Defendants support their exhaustion argument by citing authority that interprets the statutory procedures for bringing a habeas challenge to a state court conviction.  See Picard v. Connor, 404 U.S. 270, 275 (1971), citing 28 U.S.C. § 2254. At this point in time, I decline to dismiss Plaintiff's due process claim for failure to exhaust administrative remedies.

Plaintiff, on this motion to dismiss, has stated a claim for a violation of substantive due process. Defendants' motion to dismiss Plaintiff's substantive due process claim is accordingly denied.

It is worth noting that discovery, and a subsequent motion for summary judgment, may have shed more light on the merits of Plaintiff's claims. On July 21, 2006, I set a Scheduling Order which provided for discovery by November 15, 2006, and dispositive motions to be filed by January 30, 2007. It appears that neither Plaintiff nor Defendants availed themselves of discovery, or the opportunity to make a motion for summary judgment, before those deadlines.

Should these claims turn out to be true, the state Department of Corrections best rethink their procedures in this area so that what appears at this pleading stage to be a flagrant abuse of constitutional rights is not repeated.

> b. "Denial of Access to Courts" Claim

Plaintiff also alleges that he was denied access to the courts and thus lost the opportunity to file post-conviction motions, or appeals of those motions, because corrections and work release staff did not grant him authorization to research and prepare the necessary documents to meet his statutory deadlines.

The constitutional right of access to courts entitles prisoners to either "adequate law libraries or adequate assistance from persons trained in the law." Tellier v. Reish, 1998 U.S. App. LEXIS 24479, at *7-8 (2d Cir. 1998), citing Bounds v. Smith, 430 U.S. 817, 828 (1977). However, the Supreme Court has recognized that prisoners do not have "an abstract, free-standing right to a law library or legal assistance." Lewis v. Casey, 518 U.S. 343, 351 (1996). Instead, "meaningful access to the courts is the touchstone." Id., quoting Bounds, 430 U.S. at 823. Accordingly, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim." Id.

Here, Plaintiff has alleged that the facility he was housed in, Lincoln Correctional, did not have a law library. Plaintiff additionally alleges that he asked on multiple occasions for time to research the legal issues relating to his direct appeal and post-conviction motions, notwithstanding his commitments to the work release program, and was denied such additional time. Construing Plaintiff's allegations in their most

favorable light, Plaintiff alleges that he lost the opportunity to file a post-conviction motion, or an appeal of that motion, due to this inability to access legal materials. See Torres v. Viscomi, 2006 U.S. Dist. LEXIS 72818, at *9 (D. Conn. 2006) ("Inmates must be afforded access to court to file a direct appeal, a petition for writ of habeas corpus or a civil rights action challenging the denial of a basic constitutional right."), citing Lewis v. Casey, 518 U.S. at 355.

Admittedly, Plaintiffs' allegations are seriously undercut by his statements that he was ultimately given permission to attend the New York Public Library to conduct legal research, and that Binding Together acquiesced to or gave such permission so long as he completed his work release commitments. See Tellier v. Reish, 1998 U.S. App. LEXIS 24479, at *7-8 (affirming grant of summary judgment to defendants on "denial of access" claim where plaintiff was allowed access to library for eleven hours a week). The timing of when exactly Plaintiff was given permission to conduct research, as it relates to Plaintiff's statutory deadlines, is unclear. These, however, are genuine issues of material fact, better left for a motion for summary judgment (which Defendants did not bring).

Defendants' motion to dismiss Plaintiff's denial of access claim is accordingly denied.[18]

### c. Religious Freedom Claim

---

[18] Defendants also argue that Plaintiff has not exhausted his administrative remedies before he brought his "denial of access" and religious freedom claims, as required by the Prisoner Litigation Reform Act for actions regarding prison conditions. See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), citing 42 U.S.C. § 1997e(a) ("'no action shall be brought . . . until such administrative remedies as are available are exhausted"). Plaintiff, however, alleges that the Lincoln facility had no Inmate Grievance Review Committee box, through which he could pursue his administrative remedies. See Pl. Compl. ¶¶ 21-22. Plaintiff also alleges that he filed grievances while at Riverside, although it is unclear whether he did so, or which violations he alleged at that time. Pl. Compl. ¶ 13.

Accordingly, construing Plaintiff's complaint in the most favorable light, I decline at this time to dismiss Plaintiff's claims for failure to exhaust administrative remedies.

Defendants argue as well that Plaintiff's "denial of access" and religious freedom claims are barred by the statute of limitations. Plaintiff's claims appear to have arisen in March and April of 2002. Plaintiff filed his original complaint in this Court on September 22, 2003, within the three-year statute of limitations for § 1983 claims. See Owens v. Okure, 488 U.S. 235 (1989). Plaintiff subsequently voluntarily dismissed his original complaint. Rather than refiling his complaint, the *pro se* Plaintiff appealed that voluntary dismissal to the Second Circuit, who remanded Plaintiff's action to this Court on April 19, 2005. In accordance with this Court's orders (and extensions of time), Plaintiff filed his Amended Complaint on February 15, 2006 – technically outside the three-year statute of limitations.

"A layman representing himself ... is entitled to a certain liberality with respect to procedural requirements." Mount v. Book-of-the-Month Club, Inc., 555 F.2d 1108, 1112 (2d Cir. 1977). Accordingly, I decline to dismiss Plaintiff's claims as barred by the statute of limitations here.

Plaintiff alleges a violation of his constitutional right to free exercise of religion because corrections staff denied him a pass to attend church services of the Pentecostal faith.

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003). To state a claim, the prisoner must "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006), citing Ford v. McGinnis, 352 F.3d at 591. The defendants then bear the "relatively limited" burden of identifying the legitimate penological interests that justify the impinging conduct. Salahuddin v. Goord, 467 F.3d at 275, citing Ford v. McGinnis at 595. "The burden remains with the prisoner to 'show that these [articulated] concerns were irrational.'" Id., citing Ford v. McGinnis at 595; see also Ford at 588 (prisoners' free exercise claims are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged constitutional violations), citing Farid v. Smith, 850 F.2d 917, 925 (2d Cir. 1988); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).

Here, Plaintiff alleges that he was denied the opportunity to attend church services.[19] There appears to be no reason to question that Plaintiff's professed Pentacostal beliefs are "sincerely held." Plaintiff has alleged a substantial burden upon those beliefs. See Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989) ("[P]risoners should be afforded every reasonable opportunity to attend religious services, whenever possible.") True, Plaintiff was denied the "church pass" in part, it appears, due to his own disciplinary violation. However, it is "error to assume that prison officials were justified in limiting [plaintiff's] free exercise rights simply because [plaintiff] was in disciplinary confinement." Id. at 570.

It is entirely possible that after an examination of the facts, Defendants may provide a "legitimate penological interest" for Defendants' actions that rebuts Plaintiff's claim. Such a determination, however, is better left to a motion for summary judgment (which Defendants did not bring here). See Salahuddin v. Goord, 467 F.3d at 277, citing

---

[19] Plaintiff also appears to contest the facility's failure to provide services particularly designed for the Pentacostal faith. "[I]f those… individuals in the facility were Muslim… or [if] plaintiff had been Muslim, then Lincoln Correctional Facility would have made… an Imam come for Jumah Services." Pl. Opp. at 23.

14

Young v. Coughlin, 866 F.2d at 570 ("the district court should not have dismissed appellant's First Amendment claim without requiring prison officials to establish the basis for the First Amendment restrictions imposed."). Defendants' motion to dismiss Plaintiff's First Amendment claim for violation of free exercise of religion is denied.

Plaintiff also brings a state law claim pursuant to N.Y. Correct. Law. § 610(3), which provides, in part, that inmates "shall be allowed such religious services and spiritual advice and spiritual ministration from some recognized clergyman of the denomination or church which said inmates may respectively prefer…"[20] N.Y. Correct. Law. § 610(3) (2007); see, e.g., Cancel v. Goord, 278 A.D.2d 321, 322 (N.Y. App. Div. 2000); see also Salahuddin v. Mead, 2000 U.S. Dist. LEXIS 3932, at *10-11 (S.D.N.Y. 2000) (noting that state free exercise claims are considered in similar manner to federal claims). Defendants' motion to dismiss Plaintiff's state law claim, for the reasons outlined above, is denied as well.[21]

### D. Qualified Immunity

Defendants also move to dismiss Plaintiff's above-mentioned remaining claims against MacDonald, Taylor, and Fair in their individual capacities for alleged violations of a) due process, b) denial of access to the courts, and c) free exercise of religion on the grounds that Defendants are shielded by qualified immunity.

"The doctrine of qualified immunity protects state actors sued in their individual capacity from suits for monetary damages where 'their conduct does not violate clearly

---

[20] It should be noted that Plaintiff did not bring a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which creates a separate, private right of action for free exercise claims that requires the government to show a "compelling governmental interest." See Salahuddin v. Goord, 467 F.3d at 273-74, citing 42 U.S.C. § 2000cc-1 et. seq. Some courts, even where plaintiff did not specifically allege the statutory RLUIPA claim, have allowed liberal leave to plaintiff to amend his complaint to include it. See McEachin v. McGuinnis, 357 F.3d 197, 199 n.2, 205 (2d Cir. 2004) (noting that "the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim," and instructing the district court on remand to consider allowing plaintiff to amend his complaint and consider appointing counsel to plaintiff to address the resultant statutory legal issues). Here, where Plaintiff has now filed three amendments to his complaint in this Court, I decline at this late juncture to grant Plaintiff leave to amend his complaint to add the statutory claim.

[21] It should be noted, although the parties did not brief the issue, that because Plaintiff's state law claim against DOCS officials must be brought in the New York Court of Claims, it is unclear if I may exercise pendent jurisdiction over Plaintiff's claim. See Cancel v. Mazzuca, 205 F. Supp. 2d 128, 138 (S.D.N.Y. 2002) (declining to exercise pendent jurisdiction over N.Y. Correct. Law § 610 claim), citing N.Y. Correct. Law § 24(2) ("Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [DOCS] shall be brought and maintained in the court of claims as a claim against the state.")

established statutory or constitutional rights of which a reasonable person would have known.'" Baskerville v. Blot, 224 F. Supp. 2d 723, 737 (S.D.N.Y. 2002), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); see generally McKenna v. Wright, 2004 U.S. Dist. LEXIS 725, at *24-25 (S.D.N.Y. 2004) (Baer, J.). "Even where a plaintiff's federal rights are well-established, qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights." Woods v. Goord, 2002 U.S. Dist. LEXIS 7157, at *35 (S.D.N.Y. 2002), quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d. Cir. 1991). Therefore, state officials are shielded by qualified immunity if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001), quoting Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).

For the same reasons outlined above that support denial of Defendants' motion to dismiss, I decline to find at this time, as a matter of law, that Defendants' actions did not violate "clearly established law." Cf. McKenna v. Wright, 2004 U.S. Dist. LEXIS 725, at *26-27.  Regarding the "objective reasonableness" of Defendants' actions, while "the use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter of law," see Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992), the determination "usually depends on the facts of the case... making dismissal at the pleading stage inappropriate." See Woods, 2002 U.S. Dist. LEXIS 7157, at *35 (citations omitted).  Construing the allegations in the *pro se* Plaintiff's complaint in their most favorable light, see McKenna v. Wright at *26, I accordingly decline at this time to dismiss the remaining claims against Defendants on the grounds of qualified immunity.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's claims is granted in part and denied in part.

Trial of Plaintiff's remaining claims against MacDonald, Taylor, and Fair in their individual capacities for alleged violations of a) due process, b) denial of access to the courts, and c) free exercise of religion will commence on July 16, 2007, in accordance with prior orders of this Court.

16

The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**

May 1, 2007
New York, New York

                        U.S.D.J.